UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES POWELL, 537041,

     Petitioner,

v.

                            CASE NO. 2:11-CV-12841

SHERRY BURT,                   HON. AVERN COHN

     Respondent.           MAG. CHARLES E. BINDER

_____

## Answer in Opposition to Petition for Writ of Habeas Corpus

## Introduction

In July 2007, Petitioner James Powell fatally shot a man in Detroit, Michigan; two other men, who feared being shot, were also present. In July 2008, Powell pled guilty in the Wayne County Circuit Court to second-degree murder, two counts of felonious assault, felon in possession of a firearm, and possession of a firearm during the commission of a felony (felony firearm). He also pled guilty to being a habitual offender, second offense. In August 2008, Powell was sentenced, in accordance with his plea agreement, to prison terms of 25-to-40 years for the murder conviction; 2-to-4 years for each of the

felonious assault convictions; 2-to-5 years for the felon-in-possession conviction; and two years for the felony firearm conviction.

Powell commenced this action under 28 U.S.C. § 2254 by filing a petition—and then an amended habeas petition—with this Court.  In his initial petition, Powell in part claimed that he was denied due process where the court sentenced him "based on alleged acts not supported by the record, nor found by a jury, nor admitted by [Powell], nor individualized."  The State understands the amended petition to be raising the following claims:

I.   Trial counsel was ineffective for giving unreasonable advice regarding the plea offer.

II.  [Powell] was sentenced on the basis of inaccurate information, in violation of due process.

III. Counsel was ineffective for failing to object to the sentencing judge's reliance on inaccurate information.

IV.  Appellate counsel was ineffective for failing to raise the foregoing claims on direct appeal and instead raising a frivolous claim and a claim that had nothing to do with [Powell's] case and for abandoning both of those claims.

Should the Court interpret Powell to be raising different claims, the State requests an opportunity to file a supplemental pleading.

The State now answers the petition and requests that it be denied. With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

### A.    Statute of Limitations

The State is not arguing that any of Powell's habeas claims are barred by the statute of limitations.

### B.    Exhaustion

The State asserts that some of Powell's claims may not have been properly exhausted; if that is the case, those claims, while technically unexhausted, are procedurally defaulted because Powell would have no means by which to exhaust them at this point.  Further, any such claims do not merit habeas relief.

### C.    Procedural Default

The State asserts that Powell has procedurally defaulted his claims, as more fully discussed below.

### D.    Non-retroactivity Doctrine

A habeas petitioner may not rely on rules of law that were recognized after his conviction became final.  The State is not arguing that any of Powell's claims are barred by the non-retroactivity doctrine.

## Statement of the Case

## Facts and Proceedings Below

In July 2007, Petitioner James Powell fatally shot a man in Detroit, Michigan.  In July 2008, Powell pled guilty in the Wayne County Circuit Court to second-degree murder, two counts of felonious assault, felon in possession of a firearm, and felony firearm.  He also pled guilty to being a habitual offender, second offense.  In exchange for his plea, the prosecutor agreed to dismiss counts of first-degree premeditated murder and first-degree felony murder.  In addition, there was a sentence agreement: Powell agreed to serve a sentence of 25-to-40 years for the second-degree murder, plus two years for the felony firearm, and "whatever the Court chooses to impose on the two Felonious Assault Counts and the Felon in Possession Count."  (7/30/08 Tr. at 3-5.)  Powell was later sentenced in accordance with the plea agreement, to prison terms of 25-to-40 years for the murder conviction; 2-to-4 years for each of the felonious assault convictions; 2-to-5 years for the felon-in-possession conviction; and two years for the felony firearm.[1]

---

[1] The State opposes any factual assertions made by Powell that are not directly supported by—or consistent with—the state court record.

The Wayne County Circuit Court docket sheet shows that in February 2009, Powell moved to withdraw his guilty plea, alleging ineffective assistance of counsel, that he was actually innocent, and that he had valid defenses.  (See Wayne County Register of Actions, 4-5.)  The prosecutor then filed a response.  (3/24/09 Prosecutor's Answer to Motion.)[2]  Powell then seemingly asked for a new appointed counsel and his initial motion was set aside until new counsel was appointed.  (See Wayne County Register of Actions, 4-5.)  In June 2009, it appears that Powell filed a motion to correct his presentence investigation report— and that request appears to have been granted.  (*Id*. at 5.)

After that, in July 2009, Powell filed a delayed application for leave to appeal, where he raised the following claims:

> I.  [Powell] asserts that the sentence of 25 to 40 years was invalid because it was not individualized.
>
> II.  Due process requires resentencing where the court enhanced [Powell's] sentence based on facts neither admitted by Mr. Holden [sic: Powell?] nor proven to a jury beyond a reasonable doubt.  US Const Am VI, XIV.

---

[2] This response was not listed in the Wayne Circuit Court docket sheet but found in the trial court record that the State received.

On October 7, 2009, the Michigan Court of Appeals denied Powell's application "for lack of merit in the grounds presented." *People v. Powell*, No. 293213 (Mich. Ct. App. Oct. 7, 2009).

Powell then filed an application for leave to appeal in the Michigan Supreme Court, where he raised the same claims that he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the question presented should be reviewed by the Court. *People v. Powell*, 785 N.W.2d 148 (Mich. 2010).

In June 2011, Powell filed with this Court a petition for writ of habeas corpus, along with a motion to hold his petition in abeyance, asserting that he wanted to return to state court to raise three additional unexhausted claims: that his plea was illusory and neither voluntary nor intelligent; that his trial and appellate counsel were ineffective; and that he is actually innocent of second-degree murder. On July 14, 2011, this Court granted Powell's motion for a stay and administratively closed the case. This Court's stay was conditioned upon Powell presenting his unexhausted claims to the state court

within 56 days of the Court's order, and then moving to re-open his case

with this Court within 56 days of exhausting his new claims.

In September 2011, Powell returned to the state trial court and

filed a motion for relief from judgment, and later a motion to

supplement his motion for relief from judgment.  The State has been

unable to locate Powell's motion for relief from judgment, but it has

located his supplemental motion, which is being submitted as Rule 5

material.  According to Powell, he raised the following first four claims

in his motion for relief from judgment, and the remaining claims in his

supplemental motion:

> I.    [Powell] was deprived of effective assistance of counsel
>       and due process where the plea bargain was illusory
>       and the plea was neither intelligent [nor] voluntary,
>       where (1) [Powell] pled guilty to second-degree murder
>       in exchange for dismissal of excessive charges and a
>       sentence of 27-40 years when properly scored
>       guidelines called for a substantially lower sentence,
>       and (2) where the admission is insufficient to establish
>       malice for 2nd degree murder or to establish assault
>       with a dangerous weapon.
>
> II.   The felony murder statute is unconstitutional as applied:
>       larceny under $1,000 is a misdemeanor and cannot support a
>       felony murder charge.
>
> III.  [Powell] was deprived of the effective assistance of counsel
>       where counsel failed to raise specific sentence-scoring errors

8

based on constitutionally inaccurate information not admitted by [Powell].

IV.   Prior Record Variable (PRV) 7, which enhances a sentence based on subsequent or concurrent felony convictions, is unconstitutional on its face and as applied, in that it violates the double jeopardy and title-object clauses of the federal and Michigan Constitutions.

V.    Where [Powell] received ineffective assistance from his appellate attorneys this constitutes "cause for defendant's" failure to raise significant constitutional claims during his first appeal.

VI.   A person cannot be lawfully charged with, or convicted of, first degree or felony murder where the predicate offense is misdemeanor larceny because (A) interpretations of MCL 750.316(1)(b) that allow misdemeanor larceny as a predicate offense for felony-murder are based on a failure to recognize an ambiguity in the statutory language; and (B) according to case law and applicable principles of statutory construction, the phrase "larceny of any kind," as used in MCL 750.316, should not be interpreted as including misdemeanor larceny.

VII.  [Powell] should be permitted to withdraw his guilty plea because the plea was illusory and, but for trial counsel's ineffective assistance, [Powell] would not have pleaded guilty.

The trial court denied the motion for relief from judgment on the following grounds, citing to Mich. Ct. R. 6.508(D)(3) and to a lack of merit. (6/27/12 Wayne Cir. Ct. Order.) After the trial court denied the motion for relief from judgment, Powell filed a delayed application for leave to appeal in the Michigan Court of Appeals, where Powell appears

9

to have raised the same claims that he raised in his motion for relief from judgment. The Michigan Court of Appeals denied the delayed application for leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). (9/13/13 Mich. Ct. App. Order.) Powell then applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under Michigan Court Rule 6.508(D). *People v. Powell*, 843 N.W.2d 198 (Mich. 2014).

## Standard of Review Pursuant to AEDPA

Congress mandated the standards of review in federal habeas proceedings in 1996 in AEDPA and it "prevent[s] federal habeas 'retrials'" and ensures that state-court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  AEDPA "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  "The limitations imposed by AEDPA are several and significant."  *Rice v. White*, 660 F.3d. 242, 250 (6th Cir. 2011).[3]  The requirements of AEDPA "create an

---

[3] The Supreme Court has emphasized that federal courts must adhere to AEDPA's stringent and limiting standards, reversing no fewer than 22 appellate AEDPA decisions since 2010.  *See Burt v. Titlow,* 134 S. Ct. 10 (2013); *Metrish v. Lancaster*, 133 S. Ct. 1781 (2013); *Marshall v. Rodgers*, 133 S. Ct. 1446 (2013) (per curiam); *Johnson v. Williams*, 133 S. Ct. 1088 (2013); *Ryan v. Gonzales*, 133 S. Ct. 696 (2013); *Parker v. Matthews*, 132 S. Ct. 2148 (2012) (per curiam); *Coleman v. Johnson*, 132 S. Ct. 2060 (2012) (per curiam); *Howes v. Fields*, 132 S. Ct. 1181 (2012); *Hardy v. Cross*, 132 S. Ct. 490 (2011) (per curiam); *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (per curiam); *Cavazos v. Smith*, 132 S. Ct. 2 (2011) (per curiam); *Bobby v. Mitts*, 131 S. Ct. 1762 (2011) (per curiam); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011); *Felkner v. Jackson*, 131 S. Ct. 1305 (2011) (per curiam); *Swarthout v. Cooke*, 131 S. Ct. 859 (2011) (per curiam); *Premo v. Moore*, 131 S. Ct. 733 (2011); *Harrington v. Richter*, 131 S. Ct. 770, 781 (2011); *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2265 (2010); *Renico v. Lett*, 130 S. Ct. 1855 (2010); *Berghuis v. Smith*, 559 U.S. 314 (2010); *Thaler v. Haynes*, 559 U.S. 43 (2010) (per curiam); *Smith v. Spisak*, 558 U.S. 139 (2010); *McDaniel v. Brown*, 558 U.S. 120 (2010) (per curiam).

independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007). "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). "A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221 (1982).

Congress has limited the availability of federal habeas corpus relief "with respect to any claim" the state courts "adjudicated on the merits." 28 U.S.C. § 2254(d). Habeas relief may not be granted to a habeas petitioner under § 2254(d) unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunction in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Federal courts performing habeas review do not act as "super-appellate state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002). "The federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law or procedure." *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). A federal court's "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

AEDPA restricts the body of law a habeas court may consider. By its terms AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Because "[s]tate courts are not bound by the dictates of the lower federal courts," "a lower federal court's application of Supreme Court precedent is not inherently any more 'right' or 'correct' than that of state courts." *Evans v. Thompson*, 518 F.3d 1, 8 (1st Cir. 2008). "It is the Supreme Court, and

13

the Supreme Court alone, that has the 'revising authority' to 'control [the state courts'] jarring and discordant judgments, and harmonize them into uniformity.'" *Id.* at 8 n.3 (quoting *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 348 (1816)); *see also Thayer v. Haynes*, 559 U.S. 43, 49 (2010) ("[W]e hold that no decision of this Court clearly establishes the categorical rule on which the Court of Appeals appears to have relied."). Thus, under AEDPA, if there is no "clearly established Federal law, as determined by the Supreme Court" that supports a habeas petitioner's legal argument, the argument must fail. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

As the Supreme Court explained in *Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), "clearly established Federal law" referred to in § 2254(d)(1) includes Supreme Court decisions at the time of the state-court adjudication on the merits but does not include Supreme Court decisions issued after the state court merits decision but before the petitioner's conviction becomes final. This is so because the purpose of federal collateral review is to uphold final state court judgments that were valid when entered, not as a "mechanism for the continuing

14

reexamination of final judgments." *Sawyer v. Smith*, 497 U.S. 227, 234 (1990).

The only federal law that can be clearly established under § 2254(d) is Supreme Court precedent interpreting the Constitution. *Early v. Packer*, 537 U.S. 3, 10 (2002).  Indeed, Supreme Court decisions not based on constitutional grounds, e.g., decisions based on the Court's supervisory powers, are "off the table as far as § 2254(d) is concerned." *Id.*  Moreover, "[c]learly established law" under 28 U.S.C. § 2254(d)(1) is "the *holdings*, as opposed to the dicta, of this Court's decisions." *Metrish v. Lancaster*, 133 S. Ct. 1781, 1792 (2013) (quoting *Taylor*, 529 U.S. at 412 (2000)).  And merely distinguishing Supreme Court precedent is insufficient to establish the entitlement to habeas relief. *Lancaster*, 133 S. Ct. at 1792.

With respect to § 2254(d)(1), a state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Taylor*, 529 U.S. at 412-13.  A state court decision "involves an unreasonable application of clearly

established Federal law" pursuant to § 2254(d)(1) if "'the state court identifies the correct governing legal principle from [the Supreme] Court decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Further, "'[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Visciotti*, 537 U.S. at 24-25). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A federal habeas court

16

"fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Deference must be given even in cases "where the state court's reasoning is flawed or abbreviated." *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009). In habeas review, the federal courts look at the "result that the state court reached, not 'whether [its decision] [was] well reasoned.'" *Robinson v. Polk*, 438 F.3d 350, 358 (4th Cir. 2006) (quoting *Wilson v. Ozmint*, 352 F.3d 847, 855 (4th Cir. 2003)).

Moreover, "[u]nder *Johnson v. Williams* and *Richter*, it is clear that a bad reason does not necessarily mean that the ultimate result was an unreasonable application of established doctrine. A state court could write that it rejected a defendant's claim because Tarot cards dictated that result, but its decision might nonetheless be a sound one. If a state court's rationale does not pass muster . . . , the only consequence is that further inquiry is necessary." *Brady v. Pfister*, 711 F.3d 818, 827 (7th Cir. 2013).

Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have

supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Richter*, 131 S. Ct. at 786. Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87; *accord Lancaster*, 133 S. Ct. at 1786-87.

The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786. Furthermore, the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 785-86 (quoting *Yarborough*, 541 U.S. at 664). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

When a federal claim has been presented to a state court, and the state court denies relief, a rebuttable presumption arises that the state court adjudicated the federal claim on its merits, irrespective of whether the court explicitly discusses the federal claim. *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013). Indeed, it is the result to which deference is owed, not the opinion expounding it. As explained in *Rashad v. Walsh*, 300 F.3d 27, 45 (1st Cir. 2002), "[i]t is not our function . . . to grade a state court opinion as if it were a law school examination." Even if "the state court clearly applied an incorrect standard," then we must nonetheless decide whether "it reached the correct outcome." *West v. Bell*, 550 F.3d 542, 554 (6th Cir. 2008). A federal habeas court ultimately "review[s] for reasonableness the state court's ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001).

The Supreme Court has also consistently drawn a distinction between state court decisions applying a broad constitutional standard and those that apply a narrow rule. As explained in *Yarborough v. Alvarado*, where a general standard is at issue, state court decisions are given greater leeway:

> If a legal rule is specific, the range may be narrow.
> Applications of the rule may be plainly correct or incorrect.
> Other rules are more general, and their meaning must
> emerge in application over the course of time.  Applying a
> general standard to a specific case can demand a substantial
> element of judgment.  As a result, evaluating whether a rule
> application was unreasonable requires considering the rule's
> specificity.  The more general the rule, the more leeway
> courts have in reaching outcomes in case by case
> determinations.

*Yarborough*, 541 U.S. at 664; *accord Renico v. Lett*, 130 S. Ct. 1855,

1864 (2010).  Open-ended standards give states wide berth on habeas

review.  *Richter*, 131 S. Ct. at 786.  Thus, in *Knowles v. Mirzayance*, 556

U.S. 111, 114 (2009), the Court held that ineffective-assistance-of-

counsel claims must be given extra latitude in light of the general

nature of the rule:  "[B]ecause the *Strickland* standard is a general

standard, a state court has even more latitude to reasonably determine

that a defendant has not satisfied that standard."

Furthermore, with respect to § 2254(d)(2), a determination of a

factual issue made by the state courts shall be presumed correct and

may be rebutted only by clear and convincing evidence.  28 U.S.C. §

2254(e)(1); *Landrigan*, 550 U.S. at 473-74.  Facts found by a state

appellate court enjoy the same presumption.  *Lundgren v. Mitchell*, 440

F.3d 754, 763 (6th Cir. 2006).  Where a state court's factual findings are

not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000) ("[A]n implicit finding of fact is tantamount to an express one, such that deference is due to either determination." *Id.* at 286 (citing *Parke v. Raley*, 506 U.S. 20, 35 (1992))). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id.* (citing *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982)).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Rice v. Collins*, 546 U.S. 333, 339 (2006) (noting that even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination"). And, as explained in *Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007), a state court's resolution of an issue in the petitioner's favor is not entitled to

deference under AEDPA because the "standard of review is a precondition to the grant of habeas relief . . . not an entitlement to it."

Lastly, the Supreme Court has held that "review under § 2254(d)(1) focuses on what a state court knew and did." *Pinholster*, 131 S. Ct. at 1399. Therefore, review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 1398.

If the state court adjudicated any of Powell's claims on the merits, this Court must deny any attempt by Powell to supplement the state court record, whether through an evidentiary hearing, discovery, or the presentation of new evidence in light of United States Supreme Court precedent. *Pinholster*, 131 S. Ct. 1388 (2011); *accord Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013) ("While allowing a petitioner to supplement an otherwise sparse trial court record may be appealing, especially where he diligently sought to do so in state court, the plain language of *Pinholster* and *Harrington* preclude it.").

If any of Powell's claims were procedurally defaulted or otherwise not adjudicated on the merits, he has not demonstrated entitlement to a federal evidentiary hearing because the petition may be denied based

22

on the existing record.  *See* 28 U.S.C. § 2254(e)(2).  *See also Pinholster*, 131 S. Ct. at 1398 (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").  In *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), the United States Supreme Court held that "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."  The Court held that "[i]t follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id.*

## Argument

**I.    The claims in Powell's amended petition are procedurally defaulted and Powell has failed to show cause to excuse the default and actual prejudice, or that a fundamental miscarriage of justice would result if the claims are not reviewed.  Powell's claims alternatively do not warrant habeas relief because they were waived or lack merit.**

In his amended petition, Powell raises three claims: first, that trial counsel was ineffective for giving Powell unreasonable advice regarding the plea offer; second, that Powell was sentenced based on inaccurate information; and third, that counsel was ineffective for not objecting to the trial court's reliance on inaccurate information at sentencing.  These claims are procedurally defaulted.

### A.    Powell's claims are procedurally defaulted.

"[P]rocedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th

Cir. 1986)).  The last state court to issue a reasoned opinion on Powell's ineffective assistance of counsel and sentencing claims was the state trial court, which referenced Mich. Ct. R. 6.508(D)(3) and lack of merit.[4] To the extent that the trial court relied on Mich. Ct. R. 6.508(D)(3) to deny relief, Powell's claims are procedurally defaulted because Powell could have previously raised these claims.  Mich. Ct. R. 6.508(D)(3) is a sufficient procedural default rule for AEDPA purposes.  *Jackson v. Harris*, 453 F. App'x 620, 623, n.1 (6th Cir. Dec. 21, 2011).  Where a habeas petitioner has procedurally defaulted a claim he may escape the consequences of the default by showing good cause to excuse the default and actual prejudice,[5] or, that failure to review the claim will result in a fundamental miscarriage of justice.  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).   This is the petitioner's burden.

---

[4] To the extent that the state trial court denied relief due to lack of merit, that decision would get deference under AEDPA.  See *Fleming v. Metrish*, 556 F.3d 520, 530, 532 (6th Cir. 2009); *Muniz v. Smith*, 647 F.3d 619, 623 (6th Cir. 2011) (citing *Fleming*).

[5] Prejudice for purposes of procedural default analysis requires a showing that the default of the claim not merely created a possibility of prejudice to the defendant, but that it worked to his actual and substantial disadvantage.  *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002); *Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (petitioners must show actual prejudice to excuse their default).

To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *See, e.g., Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Haliym v. Mitchell*, 492 F.3d 680, 690-91 (6th Cir. 2007). A petitioner must present a substantial reason to excuse the default. *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994); *see also Amadeo v. Zant*, 486 U.S. 214, 222-23 (1988) (reviewing a claim that a document was concealed by officials). One recognized reason includes attorney error rising to the level of ineffective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). Stated differently, attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel under the criteria established in *Strickland v. Washington,* 466 U.S. 668 (1984). An appellate attorney need not raise every nonfrivolous argument on appeal, *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983), and strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, the

"process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-752). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). A petitioner is prejudiced by appellate counsel's deficient performance if a reasonable probability exists that, but for counsel's deficient performance, he would have prevailed on appeal.

To the extent that Powell in his fourth amended habeas claim asserts that appellate counsel was ineffective for not raising his ineffective assistance of counsel and sentencing claims in his first delayed application for leave to appeal, Powell's assertion lacks merit. Appellate counsel raised two issues in Powell's first delayed application and Powell has not shown that the claims that he alleges appellate counsel should have presented were clearly stronger than the claim that appellate counsel did present. Powell has failed to overcome the strong presumption that his appellate counsel was competent, and he cannot

27

show the requisite prejudice because the claims, as noted by the state

trial court, are not meritorious.

Nor has Powell shown that failure to consider his defaulted claims

would result in a fundamental miscarriage of justice.  The narrow

exception for fundamental miscarriages of justice is reserved for the

extraordinary case in which the alleged constitutional error probably

resulted in the conviction of one who is actually innocent of the

underlying offense.  *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Schlup v.*

*Delo*, 513 U.S. 298, 326 (1995); *Murray v. Carrier*, 477 U.S. 478, 496

(1986).  It is not sufficient to merely show that a reasonable doubt exists

in light of the new evidence.  Rather, "[t]o establish the requisite

probability, the petitioner must show that it is more likely than not that

no reasonable juror would have convicted him in light of the new

evidence." *Schlup,* 513 U.S. at 327.  A petitioner does not meet the

threshold requirement unless he persuades the district court that, in

light of the new evidence, no juror, acting reasonably, would have voted

to find him guilty beyond a reasonable doubt.  *Schlup*, 513 U.S. at 329.

"To be credible, [a claim of actual innocence] requires [the] petitioner to

support his allegations of constitutional error with new reliable

evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324. The Supreme Court has noted that "claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324. Further, the *Schlup* standard is demanding and permits review only in the extraordinary case. *House v. Bell*, 547 U.S. 518, 538 (2006). The Court in *Schlup* was careful to note that in order to pass through the actual innocence gateway, a petitioner's case must be "truly extraordinary," 513 U.S. at 527, for a defendant having been convicted by a jury comes before the federal court with a "strong—and in the vast majority of cases conclusive—presumption of guilt." 513 U.S. at 326, n.42. Powell has failed to meet this demanding standard, particularly where Powell, under oath, admitted to and pled guilty to the offenses. (7/30/08 Tr. at 8-10.)

### B.   Even if this Court considered Powell's underlying claims, habeas relief is still not warranted.

Powell in his first habeas claims asserts that trial counsel was ineffective for giving unreasonable advice regarding the plea offer. Specifically, Powell claims that trial counsel failed to inform him of

purportedly viable defenses to several charges; that counsel failed to inform him that the plea was illusory; and that counsel misinformed him of the actual sentencing guidelines range. None of these claims warrant habeas relief.

In order to show constitutionally ineffective assistance of counsel, a petitioner must show two things: that his counsel's performance was deficient and that he was prejudiced. *Strickland*, 466 U.S. at 687-688. Regarding the first prong, judicial scrutiny of counsel's performance must be "highly deferential" and a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Regarding the second prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To show prejudice in the plea context, a petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473,

1485 (2010).  The standards created by *Strickland* and § 2254(d) are

both highly deferential and when the two apply in tandem, review is

doubly' so.  *Richter*, 131 S. Ct. at 788 (internal citations and quotations

omitted).  Even under de novo review, "the standard for judging

counsel's representation is a most deferential one." *Richter*, 131 S. Ct.

at 788.

At the outset, it is not clear whether Powell in the state court

argued that counsel was ineffective for failing to inform him of

purportedly viable defenses to several charges.  If Powell had not raised

these claims before, the claims would be unexhausted.  And because

Powell would no longer have an available state court remedy by which

to exhaust this claim,[6] the technically unexhausted claims are

procedurally defaulted.  In other words, in situations in which a

petitioner has failed to fairly present federal claims to the state courts,

and a state procedural rule now prohibits the state court from

considering them, the claims are considered procedurally defaulted.

---

[6] Mich. Ct. R. 6.502, amended by the Michigan Supreme Court in 1995,
limits criminal defendants to filing one motion for relief from judgment
with respect to a conviction, unless a subsequent motion is based on a
retroactive change in the law or on newly discovered evidence.  Mich.
Ct. R. 6.502(G)(1) & (2).  Powell already filed with the state trial court
one motion for relief from judgment, which was denied.

*Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009) (citing *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002)); see also *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995) (Where a petitioner "fails to present his claims to the state courts and . . . is barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust.") Powell has failed to establish good cause to excuse this default, and actual prejudice.  Nor can he show that failure to consider these claims would result in a fundamental miscarriage of justice.

But even if Powell had raised these claims, or if they are unexhausted and considered, they should be deemed foreclosed by his plea.  It is well-established that claims about the deprivation of constitutional rights that occur before the entry of a plea are waived by that plea.  *United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  The Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events
> which has preceded it in the criminal process.  When a
> criminal defendant has solemnly admitted in open court that
> he is in fact guilty of the offense with which he is charged, he
> may not thereafter raise independent claims relating to the
> deprivation of constitutional rights that occurred prior to the

entry of the guilty plea.  He may only attack the voluntary
and intelligent character of the guilty plea by showing that
the advice he received from counsel was not within
[constitutional standards].

*Tollett*, 411 U.S. at 267.  In other words, a defendant who pleads guilty

generally waives any non-jurisdictional claims that arose before his

plea.  In such a case, the court's inquiry is limited to whether the plea

was knowing, intelligent, and voluntary.  *Broce*, 488 U.S. at 569.  The

plea transcript shows that Powell's plea was knowing and voluntary.[7]

Powell's claims concerning counsel's purported failures during the pre-

plea period—in addition to being defaulted—are foreclosed by his plea.

---

[7] The plea and sentence agreement was placed on the record.  When
asked if he understood the agreement, Powell replied that he did.
(7/30/08 Tr. at 3-7.)  When asked if anyone had made any other
promises to him other than what was placed on the record, Powell
replied no.  When Powell was asked if he currently was on parole or
probation, he replied probation.  (*Id*. at 6.)  The trial court then
informed Powell that a plea of guilty would amount to a violation of his
probation.  The trial court also informed Powell of all of the rights he
would be giving up by pleading guilty, and Powell replied that he
understood and that he had no questions about any of his rights as the
court had explained to him.  (*Id*. at 6-7.)  When asked if anyone was
forcing, threatening, or pressuring him in any way to plead, Powell
replied no.  (*Id*. at 8.)  A factual basis for the plea was then taken, and
the parties were satisfied that a factual basis existed and that the trial
court had complied with the court rules.  The trial court then accepted
Powell's plea, implicitly finding it voluntary and knowing.  (*Id*. at 8-10.)
The trial court's implicit findings are supported by the evidence, and
Powell has failed to rebut the presumption of correctness by clear and
convincing evidence as required by 28 U.S.C. § 2254(e)(1).

These claims are also without merit for the reasons set forth by the

prosecutor.  (3/24/09 Prosecutor's Answer to Motion.)

Powell also asserts that counsel was ineffective for not telling him

that his plea was illusory.  But Powell's plea agreement was not illusory

because Powell derived a real benefit from the agreement.  As the state

trial court reasonably determined:

> [Powell] was originally charged with first-degree
> premeditated murder and first-degree felony murder.  These
> charges were dismissed in exchanged [sic] for his plea of
> guilty for second-degree murder, two counts of felonious
> assault, felon in possession of a firearm, and felony firearm.
> On the original charges, had he been found guilty, the
> sentences would have been mandatory life imprisonment,
> while after the plea, he actually received a two-year sentence
> for felony firearm and a consecutive sentence of 25 to 40
> years' for second-degree murder to be served concurrently
> with the assault and felon in possession sentences.  These
> sentences are significantly lower than the mandatory life
> sentences for first-degree premeditated murder and felony
> murder.  Therefore, he received a benefit from the
> agreement and his agreement was not illusory and was,
> thus, voluntary.

(6/27/12 Op. at 405.)  Powell received a real, tangible benefit in

consideration for the plea agreement.  As such, Powell cannot establish

constitutionally ineffective assistance of counsel by counsel's failure to

inform Powell of the purported "illusory" nature of the plea agreement.

Where Powell cannot show that the state trial court unreasonably

34

applied *Strickland*, or that his federal constitutional rights were violated, habeas relief is not warranted on this claim.

Powell also asserts that counsel was ineffective for failing to inform him of the correct sentencing guidelines range before he accepted a plea to a specific term of years; that Offense Variables (OVs) 1, 3, and 6 were improperly scored; and that counsel should have objected to the scoring of these variables.  None of these claims warrant habeas relief.

At the outset, any challenge to the scoring of the guidelines is not cognizable on federal habeas review.   See, e.g., *Coleman v. Curtin*, 425 F. App'x 483, 484-85 (6th Cir. 2011); *Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003); *Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007) ("[A] claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review."); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Only federal constitutional questions are cognizable on federal habeas review.  28 U.S.C. §§ 2241(c)(3), 2254(a) (application for habeas writ challenging state criminal conviction may be entertained by federal

court "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States"). Both the Supreme Court and the Sixth Circuit Court of Appeals have held repeatedly that errors in the application of state law are not to be questioned on habeas review and further that federal habeas courts should not interfere in matters of state law.

But even if Powell's underlying claims are considered they do not warrant relief. Notably, counsel stipulated to the scoring of OV1, OV3, and OV6, thus waiving any challenge to those offense variables. (8/20/08 Tr. at 11.) Further, the state court reasonably found no error in the scoring to those offense variables and no ineffective assistance of counsel for failing to object:

> Defendant next contends that his counsel failed to raise objections to errors in scoring variables. He contends that OV1, OV3, and OV6 were incorrectly scored and that his counsel failed to object to the scores. Each of these variables was scored at 25 points according to the Sentencing Information Report. His total for all offense variables was 105. (The original score was 130, but the Court's record shows that OV12 was reduced from 25 points to zero points.)

> With respect to OV1, which addresses the aggravated use of a weapon, OV1 should be scored at 25 points if "[a] firearm was discharged at or toward a human being…" Michigan Sentencing Guidelines Manual, p 17, West (2008).

Defendant admitted to shooting the victim and the conviction was for second-degree murder.  Thus, his gun was discharged and he had to have aimed at the victim for Defendant to have shot the victim.  Therefore, a score of 25 of OV1 is appropriate.

As to OV3, which refers to the degree of physical injury to a victim, 25 points are assessed when "[l]ife threatening or permanent incapacitating injury occurred to a victim."  Id at p 19.  Because the victim died, the injury was permanent and incapacitating.  Thus, 25 points is a correct score or OV3.

OV6 concerns the offender's intent to kill or injure another individual.  25 points should be scored for this variable when "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result."  Id at p 20.  Defendant admitted to killing the victim and the testimony elicited during the preliminary examination overwhelmingly indicated that Defendant instructed his girlfriend to retrieve his gun for him.  This demonstrates an intent to either kill or do great bodily harm to another person.  Thus, an OV6 score of 25 points is appropriate.

Any objection to these scores by trial counsel would have been futile and trial counsel has no obligation to raise a meritless motion or make a meritless objection.  *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003); *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003).

Defendant also argues that his plea was based on dismissal of first-degree murder in exchange for a sentence exceeding the sentencing guidelines.  Because the variables were correctly scored, Defendant's sentence for second-degree murder is well within the guidelines.  The sentencing guidelines for second-degree murder provide that, with PRV Level D with OV Level III, the sentence has a range of 270

> months to 450 months.  Michigan Sentencing Guidelines
> Manual, p 88, West (2008).  Defendant's minimum sentence
> of 25 years is well within that range.  The maximum
> allowable is life and Defendant was given a maximum of 40
> years' imprisonment.

(6/27/12 Op. at 5-7.)  The trial court then deemed without merit Powell's

claim of ineffective assistance of counsel regarding the allegedly

incorrectly scored sentencing guidelines.  The state trial court's

rejection of Powell's ineffective-assistance claims on the merits was

neither contrary to nor an unreasonable application of Supreme Court

precedent, nor did its ruling constitute an "extreme malfunction" as

described in *Richter*.

Powell in his second amended habeas claim asserts that he was

sentenced on the basis of inaccurate information, in violation of due

process.  An in his initial petition, Powell claimed that he was denied

due process where the court sentenced him "based on alleged acts not

supported by the record, nor found by a jury, nor admitted by [Powell],

nor individualized."  In his third amended habeas claim, Powell asserts

that counsel was ineffective for failing to object to the sentencing judge's

reliance on inaccurate information.  None of these claims warrant

habeas relief.

Powell first raised the claims regarding his sentencing in his first delayed application for leave to appeal, but the Michigan Court of Appeals denied relief "for lack of merit in the grounds presented." Because that ruling was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, habeas relief is not warranted.

"It is undisputed that convicted defendants . . . have a due process right to a fair sentencing procedure." *United States v Anders*, 899 F 2d 570, 575 (6th Cir. 1990).  In passing sentence, a court should be provided as much accurate information as possible in order to render an appropriate sentence.  Due process requires that a defendant be afforded an opportunity to refute information relied upon by the sentencing judge, if such information can be shown to have been materially false.  *Collins v. Buchkoe*, 493 F.2d 343 (6th Cir. 1974); *United States v. Cesaitis*, 506 F. Supp. 518 (E.D. Mich. 1981).

In this case, Powell was afforded such an opportunity.  Before sentencing, counsel said that he and his client had reviewed the presentence report and that there were "a few inaccuracies," which counsel proceeded to go over with the court; the trial court even agreed

with some of counsel's comments.  (8/20/08 Tr. at 3-6.)  The attorneys

then stipulated to the scoring of several offenses variables and counsel

was given an opportunity to challenge the scoring.  (*Id*. at 10-18.)  As

noted above, counsel stipulated to the scoring of certain offense

variables, including OV1, OV3, and OV6, but he did object to the

scoring of others.  Before it imposed a sentence, the court also asked

Powell if there was anything that he wanted to say and Powell replied

"Nor, sir."  (*Id*. at 19.)  Powell has failed to show that the trial court

relied on any materially false facts in imposing its sentence.  In other

words, he has not shown that the trial court relied on "extensively and

materially false" information that he had no opportunity to correct.

*Townsend v. Burke*, 334 U.S. 736, 741 (1948).[8]

Powell in his initial petition claimed that his rights were violated

where the trial court sentenced him based on facts not found by a jury

---

[8] To the extent that Powell may be asserting any purported errors in his
presentence investigation report, there is no federal constitutional right
to such a report.  *Allen v. Stovall*, 156 F. Supp. 2d 791, 797 (E.D. Mich.
2001).  Therefore, the mere presence of inaccurate information in a
presentence report does not constitute a denial of due process so as to
entitle a petitioner to habeas relief.  *Id*.  Even where there is an alleged
factual inaccuracy in a presentence report, a court need not resolve the
dispute when the information is not relied on in arriving at the sentence
that was imposed.  *Warren v. Miller*, 78 F. Supp. 2d 120, 131 (E.D.N.Y.
2000).

beyond a reasonable doubt; Powell cited *Blakely v. Washington*, 542 U.S. 296 (2004) for support.  Habeas relief is not warranted on this claim.  In *Blakely*, the Supreme Court held that, other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.  *Blakely*, 543 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).  *Blakely* involved a trial court's departure from Washington's determinate sentencing structure.  Michigan, in contrast, has an indeterminate sentencing system.  The maximum term of imprisonment is set by law.  *People v. Drohan*, 475 Mich. 140, 160-161, 715 N.W.2d 778 (2006); *Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010) (Michigan's sentencing laws create an indeterminate-sentencing scheme).  Indeterminate sentencing schemes do not violate the Sixth Amendment by invading the province of the jury, so long as the defendant is sentenced within the statutory maximum.  *Blakely*, 542 U.S. at 304-305.  In this case, the sentencing court did not exceed the statutory maximum for Powell's crimes.  Therefore, the sentencing scheme did not run afoul of the Sixth Amendment.  Indeed, the Sixth

Circuit has rejected claims like Powell's. *Montes*, 599 F.3d at 497 (Michigan's indeterminate sentencing scheme "does not violate [a petitioner's] due process rights or his right to a jury trial"); see also *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009). Powell has failed to show that *Blakely* applies to Michigan's indeterminate sentencing scheme.

Powell's claim that he was denied due process because his sentence was not individualized also does not warrant habeas relief. The Supreme Court "has refused to extend the doctrine of individualized sentencing to noncapital cases." *Hastings v. Yukins*, 194 F. Supp. 2d 659, 673 (E.D. Mich. 2002) (citing *Harmelin v. Michigan*, 501 U.S. 957, 995-996 (1991)). Since Powell has no constitutional right to an individualized sentence, "no constitutional error would occur if the state trial court failed to consider mitigating evidence on [his] behalf at sentencing." *Id.*; see also *U.S. v. Levy*, 904 F.2d 1026, 1035 (6th Cir. 1990) (holding that because the Constitution does not require individualized sentencing in non-capital cases, the Constitution does not require that a sentencing court consider mitigating evidence).

42

In the end, Powell has failed to show that the Michigan Court of Appeals' merits ruling on the issues that he raised in his first delayed application was contrary to or an unreasonable application of Supreme Court precedent or an "extreme malfunction" as described in *Richter*.

## Conclusion

Habeas relief is an "extraordinary" remedy, *Bousley v. U.S.*, 523 U.S. 614, 621 (1998), and not warranted on any of Powell's claims.

Powell cannot be granted relief on any claims that have not been properly exhausted, as detailed above. Any such claims are also procedurally defaulted because Powell would have no means by which to exhaust such claims at this point; alternatively, such claims not merit habeas relief.

Powell has procedurally defaulted some of his claims for another reason: failing to raise them in his first delayed application for leave to appeal. Where Powell has not shown cause and prejudice to excuse the default, or that failure to review the claims would result in a fundamental miscarriage of justice, review of his defaulted claims should be precluded. But even if they are considered, habeas relief is not warranted.

The state courts' rejection of Powell's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. The state-court decisions in this case were not "so lacking in justification" that

they resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. The formidable threshold for granting habeas relief has not been met because fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough*, 541 U.S. at 664. In other words, "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." *Loggins v. Thomas*, 654 F.3d 1204, 1220 (11th Cir. 2011). Here, there was no "extreme malfunction." *Richter*, 131 S. Ct. at 786. Consequently, habeas relief should be denied.

Powell has also not demonstrated entitlement to any discovery. "Habeas petitioners have no right to automatic discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings under the Federal Rules of Civil Procedure only "for good cause." R. Governing 2254 Cases in the U.S. Dist. Cts. 6(a). "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate

that he is . . . entitled to relief.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)). "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'" *Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)). Habeas Rule 6(a). "Conclusory allegations are not enough to warrant discovery under Rule 6, rather, a petitioner must set forth specific allegations of fact." *Williams*, 380 F.3d at 974. Powell has not met this burden.

Additionally, the State opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability (COA) to proceed further, if this Court denies the petition. In order to obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the petitioner is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner

46

must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'") (citations omitted).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack*, 529 U.S. at 483-84. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.

When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or

that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted.  *Id.*

"The issuance of a COA must not be pro forma or a matter of course," and a habeas petitioner who seeks the issuance of a COA must show more than the absence of frivolity or the presence of good faith on his or her part in order to obtain a COA.  *Miller-El*, 537 U.S. at 337-38.  Finally, a habeas petitioner's conclusory assertion that jurists of reason would find his or her claims to be debatable is insufficient to warrant the issuance of a COA.  *See Bagby v. Saffle*, 53 F. App'x 25, 28 (10th Cir. 2002) (stating that the petitioner's "mere conclusory assertions to the contrary" are not enough to satisfy the burden).  Powell has failed to show that a COA is warranted in this case.

## Relief

For the reasons stated above, the State respectfully asks this Honorable Court to deny the petition, and to deny Powell any other relief that he seeks or may seek, including but not limited to discovery, evidentiary hearings, bond, oral argument, and a certificate of appealability.

Respectfully submitted,

Bill Schuette
Attorney General

s/Raina Korbakis

Assistant Attorney General
Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
korbakisr@michigan.gov
P49467

Dated: October 2, 2014
AG#2014-0074129-A/Powell, James/Answer

## Certificate of Service

I certify that on October 2, 2014, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

HONORABLE AVERN COHN
MAGISTRATE JUDGE CHARLES E. BINDER

and I certify that Christy Wendling-Richards has mailed by United States Postal Service the papers to the following non-ECF participant:

James Powell #537041
Muskegon Correctional Facility
2400 S. Sheridan
Muskegon, MI  49442

Respectfully submitted,

Bill Schuette
Attorney General

s/Raina Korbakis

Assistant Attorney General
Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
korbakisr@michigan.gov
P49467