STATE OF MICHIGAN

THE THIRD JUDICIAL COURT - CRIMINAL DIVISION

THE PEOPLE OF THE STATE OF MICHIGAN,

     vs.                       Case No. 08-006961
                                       2007718778

JAMES ANDREW POWELL,

                    Defendant.
_____/

<u>SENTENCE</u>

        Proceedings had and testimony taken before

the HONORABLE TIMOTHY M. KENNY, Wayne County Circuit

Judge, Room 602, Frank Murphy Hall of Justice, Detroit,

Michigan, on Wednesday, August 20, 2008.

APPEARANCES:

        MS. ELIZABETH WALKER, Esq.,

            Appearing on behalf of the People.

        DOUGLAS HAMPTON, Esq.,

            Appearing on behalf of the Defendant.

PROSECUTOR'S OFFICE
RECEIVED

OCT 15 2008

FILE ROOM

Processed
Notice of Filing sent
Clerk

SHEDRIA L. BLACKMAN, CSR - 0454 - OFFICIAL COURT REPORTER

```
 1              I N D E X    P A G E

 2  Witness                               Page
    SENTENCE                                3
 3

 4

 5

 6              E X H I B I T S

 7

 8  Identification              Marked  Received
    NONE
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                            2
```

1    Detroit, Michigan

2    Wednesday, August 20, 2008

3    Approximately 12:10 p.m.

4    PROCEEDINGS

5    THE CLERK:  Case Number 08-6961, the People

6    of the State of Michigan versus James Powell.

7    This matter is set day for sentencing.

8    MS. WALKER:  Good morning, Your Honor,

9    Elizabeth Walker for the People.

10    MR. HAMPTON:  Douglas Hampton on behalf of

11    Mr. Powell.  We have had an opportunity to go through

12    the Presentence Report.  There are no additions,

13    However, there are a couple of inaccuracies,

14    I would like to bring to the Court's attention with

15    respect to the agent's description of the offense.

16    We're probably about the third page, Judge, of your

17    report at the bottom.

18    It indicates that Mr. Powell began firing

19    shots at the witness.  That is not true.  We

20    established that at the Preliminary Examination.

21    That's why the two Counts of assault with intent to

22    murder were dismissed at the Preliminary Examination

23    and two Counts of felonious assault were added.

24    The testimony was that there were shots that

25    were fired in the air, and actually one shot that hit a

3

SHEDRIA L. BLACKMAN, CSR - 0454 - OFFICIAL COURT REPORTER

1    roof of the house and another shot that hit a door, the

2    door of a vehicle.  That this was nowhere near the

3    other witness that precipitated those particular

4    charges.

5           So for the record I believe that is

6    completely inaccurate and should be stricken from the

7    report.

8           MS. WALKER:  I did not conduct the

9    Preliminary Examination.  So I cannot attest to the

10   accuracy of that information.  I do know that more than

11   one shot was fired.  So I will have to defer to counsel

12   as to that factors.

13          THE COURT:  All right.  I will delete that

14   sentence.

15          MR. HAMPTON:  One more point, Judge, on that,

16   also on the same agent's description of the offense.

17   There is a statement Mr. Powers took money from the

18   complainant.  Also at the Preliminary Examination,

19   Judge, that was not established.  That was not

20   testimony that was given by the witnesses.

21          MS. WALKER:  I believe money was demanded.

22   That's primarily for the reason contact to begin with.

23   Whether it was turned over, I cannot say.

24          MR. HAMPTON:  That's the difficulty.  That I

25   don't I don't want him to have some time down the line.

                                                          4

1    There's a statement that the defendant got out of his

2    truck and got in a verbal argument with the

3    complainant.   I think that coincides with what Madam

4    Prosecutor was talking about, but the fact that he

5    actually took money from the client --

6              THE COURT:  Right.

7              MR. HAMPTON:  He denies that.

8              Your Honor, one more thing.   In the

9    witness -- victim impact statement, Judge, there is

10   some testimony that my client had been laughing in

11   court and was not showing remorse in court.

12             And Judge, we've been in front of you at

13   least three times and that has never happened.   And

14   certainly I don't want the impression to be given --

15   it's under the victim's statement, Judge, or by the

16   reporter, anyone that reads this report down the line

17   that my client is not remorseful regarding the

18   situation.

19             Certainly if he was not taking it seriously,

20   I am certain that the Court would have reprimanded my

21   client, me and everyone else involved in this case if

22   my client was in court laughing at any time or even

23   smiling for that fact.

24             THE COURT:  No.  I agree with you.  That I

25   certainly don't recall seeing that type of behavior.

5

```
 1    If I did, I would note that.  But there is also a
 2    notation that the victim's family says that he's
 3    laughing all the time.
 4         Now whether that occurred at some other court
 5    appearance in District Court or whatever, I have no
 6    idea.  But certainly for purposes of whatever sentence
 7    transcript is generated which may come before the
 8    Parole Board at some point, I would indicate that for
 9    the record I have not personally observed Mr. Powell
10    laughing or appearing to make light of this particular
11    circumstance.
12         Because certainly I would have made note of
13    it.  But in terms of the victims' observations in other
14    proceedings, I'm going to let the victim impact
15    statement remain as it is.
16         MS. WALKER:  Thank you.
17         MR. HAMPTON:  Thank you.
18         One final thing, Judge, that I would like to
19    touch upon.  I was going to make a statement with
20    regard to restitution, but it already indicates in the
21    report that restitution should be held at zero.
22         MS. WALKER:  I'm going to challenge that.
23         THE COURT:  Well, I don't believe that's
24    accurate.
25         MS. WALKER:  I would like to address that
```

6

1    when the Court is ready.

2           THE COURT:  We can certainly address that.

3    Let me just state preliminarily what my policy and

4    procedure is.  First of all, in the Crime Victim Rights

5    Act the victim is, surviving victim's family members

6    are entitled to restitution.

7           The policy and procedure that I follow is to

8    have prosecutor's office work with the victim's family

9    and provide documentation for that particular loss,

10   that dollar figure.  The basis for that dollar figure

11   is then shared with the defendant and counsel.

12          If for some reason they choose to dispute

13   that figure, then we will have a Hearing, and then I

14   will determine what is the appropriate dollar figure.

15          MS. WALKER:  I'm satisfied with that.  We

16   have part documentation today.  The reason we only have

17   part is that the victim was buried in Iraq.  His fiance

18   was in Iraq.  He was originally from there, and that's

19   where the body was returned for burial.

20          Some of those costs we do yet have the

21   receipt for because I think in the grieving process

22   some of them got misplaced, but we are obtaining

23   duplicates.  We do have the initial receipts for the

24   initial funeral cost state side.  That includes a

25   family discount, if you will, a discount for the

7

1      family.   I guess there is a connection or maybe just a

2      friendship with the funeral home was $4,250.00, which

3      they paid in full.

4             That does not reflect the cost to transport

5      the coffin and burial in Iraq.  So they have that part.

6      They are producing or getting duplicates of the other

7      part, of the rest of the cost for that.  And,

8      therefore, they're fully prepared to when they get

9      those, turn those over to the Probation Department.

10            They told the Probation Department that it

11     was approximately $12,000.00 in total.  This represents

12     approximately one third of the -- it's expensive to

13     return the body there, but that's --

14            THE COURT:  Let me just suggest this,

15     Ms. Walker.  You know to what extent that it is

16     possible, I would much prefer to have the total bill

17     before we have a Hearing.  I think it can become

18     burdensome to the Court to kind of do it in segments.

19            I can appreciate the fact that there is some

20     documentation, and it just seems to me that it may be

21     easier for restitution amount purposes if we can have

22     the totality at one time.

23            Now I may recognize that perhaps having to

24     deal with matters overseas, that that may become

25     problematic, and it may become difficult, if not

                                                              8

1    impossible I don't know to get all of the figures

2    together.

3           If that's the case, then I think, you know,

4    you can submit it.  If it turns out to be like 90

5    percent or 80 percent of it, then it's communicated to

6    the Probation Department, and the defense that -- well,

7    there is still a portion left over, and it's for this

8    particular purpose.  That's fine.  But I just as soon

9    not do it one chapter as a time.

10          MS. WALKER:  I understand, Judge.  I only was

11   offering that just too so the record was clear that it

12   is not about zero.  It is more, and we are gathering

13   those documents, and we will get the others before we

14   ask the Court to make a final determination.

15          MR. HAMPTON:  Just so the record is clear,

16   Judge, obviously I don't want to make a money argument

17   today, especially in light of the circumstances, one.

18   But just for the record we would dispute some of the

19   costs that I anticipate now I believe the prosecution

20   is going to try to add.  As far as a restitution amount

21   if they are talking about shipping a body back to Iraq,

22   when this was a citizen, Judge, if not an American

23   citizen but working and living here in the state and

24   trying to impute that cost on my client, as his

25   attorney, Judge, obviously we'll have to dispute that.

                                                         9

1   It sounds as though we will be having a restitution

2   Hearing.

3                  THE COURT:  That will be fine.  I think once

4   all the information is in, it's communicated to you,

5   then I think what we'll then have you have the

6   opportunity to let us know what you dispute.  We'll

7   litigate if there's a controversy.

8                  MS. WALKER:  That's fine.

9                  MR. HAMPTON:  That's fine, your Honor.

10                  Thank you.

11                  Judge, I believe one of the last points I'm

12   not sure if Madam Prosecutor wants to bring it.

13                  MS. WALKER:  The guidelines.

14                  I think we have agreed, Judge, that there are

15   some corrections that should be made to the SIR.  On

16   the PRV's we agree that PRV One is zero.  Two should be

17   five.  Three is zero.  Four is zero, but PRV Five

18   should be 10.

19                  The defendant had five prior misdemeanor

20   offenses.  One was a driving while license suspended,

21   which the defense interprets as a traffic offense and

22   therefore should not be counted.  I interpret it as a

23   misdemeanor which should be counted.

24                  Even if he's right, and I'm wrong, there are

25   still four, which means he should get 10 points on PRV

                                                          10

1    Five instead of five.

2           MR. HAMPTON:  Judge, her recitation is

3    correct.  I mean even if I'm correct to that amount, we

4    still have enough for the 10.  But it does not change

5    from a "D."  It's still 45 points.

6           MS. WALKER:  It's 45 instead of 40, but it's

7    still a "D."

8           THE COURT:  PRV Five all right is 10 points.

9           Just for the record I would believe that it

10    is a misdemeanor traffic offense, does count as a

11    misdemeanor as opposed to a civil infraction like

12    making a prohibited left turn, something like that.

13    But it doesn't change the points.  It's fairly

14    academic.

15           MS. WALKER:  On the Offense Variables I think

16    this is a need for changes.  We agree that OV One is

17    25, OV Two is five.  OV Three is 25.  OV Four is zero,

18    OV Five is scored at 15.  I believe the defense

19    disputes that.  Six is 25.  Nine is 10.

20           The Probation Department has scored OV 12 at

21    25.  I don't believe OV 12 should be scored.  If I'm

22    correct in understanding the guidelines, I don't think

23    in the final analysis it would matter.  But just so

24    that the SIR is correct, I don't have any score for OV

25    12.  I have it at zero.

11

1     MR. HAMPTON:  Obviously the defendant has it

2  at zero as well, Judge.

3     THE COURT:  I agree.  12 is zero.

4     MS. WALKER:  Everything else is zero.  So the

5  total is, my total would be 105, which would still be a

6  three.  The defense disputes OV Five being scored at

7  15.  I will let him make his argument, and I will put

8  forth why I think it should be 15.

9     MR. HAMPTON:  Judge, that's the only dispute

10  we actually had on the OV's.  OV Five has to do with

11  psychological injury sustained to a member.

12     MS. WALKER:  The member family, Judge.

13     MR. HAMPTON:  Understanding treatment does

14  not have to be sought, they don't have to have already

15  seen a psychiatrist.  But if you look at the actual

16  Presentence Investigator's Report that we received,

17  Judge, aside from the fact that they are mad about this

18  incident, which I can completely understand, my client

19  completely understands.  The fact that they miss their

20  family member, I completely understand.  But that is

21  nothing that is out of the ordinary.

22     I've just been given some information just

23  prior to us coming up here, Judge, regarding a family

24  member, a younger person that lived in the household

25  that -- by the way we were unable to contact for

12

1    purposes of the Preliminary Examination or even have

2    any discussion with this person.

3         What he indicated is that the family members

4    are saying now that he's seeing some family doctor and

5    is suffering from depression regarding this.  Judge, we

6    haven't heard any of this.  As a matter of fact, today

7    is the first time that I heard anything about this

8    individual that for quite a while could not be found by

9    the prosecution.

10        Aside from that, Judge, there has been no

11   documentation that has been presented to the Court

12   there has been any doctor visit, any treatment

13   whatsoever.

14        This is essentially a family member coming in

15   today after a statement was already given in the

16   Presentence Report that there wasn't any -- coming in

17   today saying well, this is a family member that has

18   been having some psychological problems.

19        If that's all they have, Judge, then I don't

20   believe that that OV Five should be scored at 15.  I

21   believe it should be zero because there is nothing out

22   of the ordinary under those circumstances that should

23   rise to that level.

24        MS. WALKER:  The particular family member is

25   the younger brother, who lived with the deceased.  He's

                                                      13

SHEDRIA L. BLACKMAN, CSR - 0454 - OFFICIAL COURT REPORTER

1    not attended any of the court proceedings.   Part of

2    that, and perhaps counsel has less information.   There

3    is a language problem, which is obviously why

4    Mr. Hammoud is here to help me even to communicate with

5    the family.   And Mr. Hammoud has been helpful in

6    helping Larry Talon, the other prosecutor who was

7    originally assigned the case, to communicate with the

8    family.

9              So while they have some ability to

10   communicate in English, it's limited.   I have no

11   ability to communicate in Arabic.   I inquired and could

12   not make clear to them what the question was that I was

13   asking through Abed Hammoud.   Mr. Hammoud was able to

14   ask -- he was able to explain what we mean by

15   psychological need or treatment or counseling or

16   assistance.

17             The younger brother was the one who was

18   probably the closest not -- the family is not close,

19   but this particular younger brother lived with the

20   deceased.   He has not been able to work since this.   He

21   has not eaten appropriately.   Let's say he continues to

22   go back to the house and to wander through the house

23   and to cry.

24             He's gone to -- he's not been able to get

25   himself back to normal functions.   He goes to this

                                                    14

1    family doctor.  Do what?  What's the matter?  Why can't

2    I shake that off?  Why can't I seem to function.  The

3    doctor has told him it's depression brought on as a

4    result of this incident.

5             I believe that that constitutes a need for

6    psychological treatment.  Whether he gets it, whether

7    he treats with a clinician is a different story.  And I

8    can think of both cultural and language reasons why

9    that might, as well as economic, might be problematic,

10            But I certainly think in scoring the Offense

11   Variables this one family member is grieved in this

12   particular way and has sought at least an explanation

13   from medical personnel, would qualify as a need for

14   psychological treatment.  That would warrant the 15

15   points.

16            The others are more angry perhaps and better

17   able to cope perhaps because they are older.  I don't

18   know.  But that doesn't mean that this is false or that

19   he has to bring in his medical records to show that.  I

20   don't think that's what the guidelines indicate.

21            MR. HAMPTON:  I can be very brief, Judge.  I

22   certainly don't want to seem insensitive.  This is a

23   very difficult situation for everyone in the courtroom.

24   I certainly don't want the family to think I'm

25   insensitive.  But Mr. Hammoud has been with the family

                                                        15

1    here at least on two, maybe three proceedings and had

2    ample opportunity to have garnered this information,

3    provide some documentation to the Court this individual

4    has actually treated or is actually going through a

5    depression.

6            This is the first time we're hearing from

7    this person.  From what we had been told, he's going to

8    be out of state.  They are coming back.  They are going

9    through all these particular issues right now.

10           Certainly prior to today that is information

11   that could have been gotten to Mr. Talon, or

12   Mr. Hammoud or someone else at the prosecutor's office.

13   Because if we're talking about a language barrier, he

14   has at least been here over a month now and having

15   discussions with the same family that has been in the

16   courtroom with me every single proceeding.

17           Again I don't want to be insensitive, Judge,

18   or I'm not saying that he's lying or anything of that

19   nature.  The purpose of the guidelines, there has to be

20   more than just an allegation brought up at the

21   sentencing.  There has to be something that the Court

22   can hang its hat on.

23           THE COURT:  Well, I would agree that there

24   has to be something that the Court can hang its hat on,

25   and I do think that the emphasis on the guidelines is

                                                      16

1    on the nature of the injury, not on the extent and/or

2    quality of the treatment.  It has to be an injury that

3    requires professional treatment, as opposed to someone

4    who would be going through the normal grieving process.

5              And as to that, I look to what is the

6    victim's impact statement that is here contained in the

7    Presentence Report, and the victim's brother

8    articulates that some 13 months after the death he's

9    saying that he doesn't want to accept the fact that

10   he's lost his brother, and that we all still cry.

11             Well now we have all, many of us have lost

12   family members, whether it's a parent or sibling or

13   whatever, and there is a grief process that we all go

14   through.

15             It does seem to me if you are 13 months away

16   from a particular loss, and you still are saying I

17   don't want to accept the fact.  I don't want to accept

18   the reality that I have lost a loved one, and that

19   you're -- I don't want to say that you're not crying.

20             There are, I mean quite frankly I mean two

21   days ago was the anniversary of my father passing.

22   When I spoke to my mother, I know it's still a bad day

23   for her, but she doesn't do that every day.  She

24   doesn't mourn all the time.

25             And it does seem to me that 13 months after

17

SHEDRIA L. BLACKMAN, CSR - 0454 - OFFICIAL COURT REPORTER

1   the incident still crying, still not accepting the

2   reality of what has happened, does constitute the kind

3   of psychological injury that if it were someone in my

4   family that was reacting that way, I would be going to

5   the telephone and making an appointment for this person

6   to go see a counselor.

7         So that's my ruling.

8         And, Mr. Hampton, your objection is noted and

9   protected for appeal, but I do think 15 points is

10   appropriate.

11         MR. HAMPTON:  Thank you, Judge.

12         THE COURT:  All right.

13         MR. HAMPTON:  Other than that, your Honor, we

14   are prepared.  Ready to proceed.

15         MS. WALKER:  As far as the sentence, the

16   family has written a very brief statement, and they

17   have asked that I read it into the record as their

18   impact statement.

19         It's dated August 17th, 2008.

20         "We, the Al-Ganzawi Family are requesting

21   justice for our beloved brother and son, Haidar

22   Al-Ganzawi, for the pain and suffering that was brought

23   on to us by this stranger, the accused, will never end.

24         An innocent man's life was taken away.  The

25   smile has been taken away.  We were in the process of

18

1    preparing for his wedding.  Instead, we prepared for

2    his funeral.  This has been very heartbreaking.  He put

3    smiles on our faces and was a great person.  Our tears

4    will always be flowing, and our house will always

5    mourn.  His life was taken away so violently.

6         We, the Al-Ganzawi Family, wish the accused

7    in this horrific crime be punished for his crime and go

8    to prison.  He should remain in a prison cell so he

9    shall not hurt anyone else again.

10         Thank you, the Al-Ganzawi Family."

11         Thank you.

12         THE COURT:  Anything else you want to add

13    other than there's a sentence agreement?

14         MS. WALKER:  No.  I just ask the Court

15    sentence according to that agreement.

16         THE COURT:  Mr. Hampton, anything else you

17    want to say?

18         MR. HAMPTON:  Nothing for myself, your Honor.

19         THE COURT:  Mr. Powell, this is the date and

20    time scheduled for sentencing.  You have the right to

21    speak at sentencing if you like.

22         Is there anything that you would like to say

23    before I impose sentence?

24         DEFENDANT POWELL:  No, sir.

25         THE COURT:  All right.

19

1             I'll go along with the sentencing agreement.

2             MR. HAMPTON:  Your Honor, I may then because

3   I had spoke to my client, and I thought that he was

4   going to say something.  But I at least want to put on

5   the record my client was completely remorseful

6   regarding this incident, not just because of his plight

7   (sic), Judge, but also for the family that was involved

8   in this particular incident.

9             He's articulated that to me numerous times

10  that I have actually visited him in jail since he has

11  been awaiting this particular case.  I just wanted to

12  be clear for the Court that's his feeling on this.

13            THE COURT:  On the charge of felony firearm

14  it is the sentence of the Court that you be committed

15  to the Michigan Department of Corrections for a period

16  of two years with credit for 140 days spent in custody.

17            On charge of being a felon in possession of a

18  firearm it is the sentence of the Court that you be

19  committed to the Michigan Department of Corrections for

20  a period of not less than two years, a period not

21  greater than five years.

22            On the two charges of felonious assault, it's

23  the sentence of the Court that you be committed to the

24  Michigan Department of Corrections for a period of not

25  less than two years, a period not greater than four

20

1   years on each Count.

2           On the charge of murder in the second degree

3   it is the sentence of the Court that you be committed

4   to the Michigan Department of Corrections for a period

5   of not less than 25 years, a period not greater than 40

6   years.

7           The second degree murder sentence along with

8   the two Counts of felonious assault and felon in

9   possession of a firearm will run concurrent with one

10  another.  They will run consecutive to the two years on

11  the felony firearm.

12          There's $60.00 state cost, $60.00 Crime

13  Victim Assessment Fee.  $600 state costs -- court cost

14  rather and $400.00 attorney fees.

15          You may file application for leave to appeal

16  your conviction and sentence.  If you choose to do so,

17  sir, you must do so within 42 days.  If you can't

18  afford to hire an attorney, the Court will appoint

19  and --

20          MR. HAMPTON:  Judge, did you say attorney

21  fees in this matter?

22          THE COURT:  Yes.

23          MR. HAMPTON:  We are retained on this matter.

24          THE COURT:  Then I will correct that.  It

25  should be retained on here.  I'm sorry.

21

SHEDRIA L. BLACKMAN, CSR - 0454 - OFFICIAL COURT REPORTER

1          No attorney fees.

2          If you can't afford to hire an attorney for

3     your appeal, the Court will appoint an attorney and

4     furnish the attorney with portions of the transcripts

5     and records that may be needed.  That has to be done

6     within 42 days as well.

7          Good luck to you, sir.

8          MR. HAMPTON:  Thank you, Judge.

9          (Whereupon this matter was concluded).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                    -- -- --

25

22

1

2        R E P O R T E R ' S        C E R T I F I C A T E

3   STATE OF MICHIGAN )
                       ) ss
4   COUNTY OF WAYNE    )

5

6                I, SHEDRIA L. BLACKMAN, CSR-0454, Official

7       Court Reporter in and for Recorder's Court, in the City

8       of Detroit, State of Michigan, do hereby certify that

9       the foregoing pages 1 through 23, inclusive, was

10      reduced to typewritten form by means of

11      Computer-Assisted Transcription and comprise a true and

12      accurate transcript of the proceedings taken in the

13      People of the State of Michigan versus James Powell,

14      File Number 08-6961 on August 20, 2008.

15

16

17

18

19      SHEDRIA L. BLACKMAN, CSR-0454
        OFFICIAL COURT REPORTER

20

21   DATED:  This 8th day of October, 2008.

22

23

24

25

                                                          23

SHEDRIA L. BLACKMAN, CSR - 0454 - OFFICIAL COURT REPORTER